UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA Y. McCLAIN,                                    Case No. 12-11172

                Plaintiff,                       Michael Hluchaniuk
v.                                                   United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (Dkt. 12), DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Dkt. 19),
AND REMANDING PURSUANT TO SENTENCE FOUR**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On March 16, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  The

parties consented to the jurisdiction of the undersigned magistrate judge.  (Dkt.

16).  This matter is before the Court on cross-motions for summary judgment.

(Dkt. 12, 19).  Plaintiff filed a reply in support of her motion.  (Dkt. 20).  The

Commissioner recently filed an affidavit, which was referenced in its motion but

not initially attached.  (Dkt. 21).

B.     Administrative Proceedings

On July 14, 2008, plaintiff filed an application for disabled widow's benefits, alleging disability beginning July 13, 1997.  (Dkt. 7-2, Pg ID 43).  The claim was initially disapproved by the Commissioner on April 8, 2008.  *Id*. Plaintiff requested a hearing and, on April 23, 2009, plaintiff appeared with an attorney before Administrative Law Judge (ALJ) Andrew G. Sloss, who considered the case de novo.  In a decision dated November 17, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 43-53).  Plaintiff requested a review of this decision on December 22, 2010.  (Dkt. 7-2, Pg ID 39).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 14, 2012, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 32-35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the Court **GRANTS** plaintiff's motion for summary judgment, **DENIES** the Commissioner's motion for summary judgment, and **REMANDS** this action for further proceedings under sentence four.

II.     **FACTUAL BACKGROUND**

A.     ALJ Findings

The issue before the ALJ was whether plaintiff is disabled under § 202(e) of the Social Security Act.  In addition, the ALJ was required to determine whether plaintiff is the widow of the deceased, has attained the age of 50, is unmarried, and

has a disability that began before the end of the prescribed period. The prescribed period ends the month before the month in which plaintiff attains age 60, or if earlier, either seven years after the worker's death or seven years after the widow was last entitled to survivor benefits, whichever is later. (Dkt. 7-2, Pg ID 43). The ALJ determined that plaintiff's prescribed period began on January 11, 2004, the date the wage earner died. Therefore, plaintiff was required to establish that her disability began on or before January 31, 2011 to be entitled to disabled widow's benefits. (Dkt. 7-2, Pg ID 43, 45).

Plaintiff was 50 years of age at the time of the most recent administrative hearing, and 38 years old on the alleged onset date. (Dkt. 7-3, Pg ID 79, 51). Plaintiff has no past relevant work. (Dkt. 7-2, Pg ID 51). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 7-2, Pg ID 45). At step two, the ALJ found that plaintiff's degenerative disc disease, coronary artery disease, borderline intellectual functioning, depressive disorder, and asthma were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 7-2, Pg ID 46). The ALJ concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except the claimant must be allowed to
> alternate her position from sitting to standing and
> standing to sitting for 1-2 minutes every hour. She cannot
> constantly push or pull with her upper or lower
> extremities and can perform no constant twisting or
> pivoting. She can never climb ladders, ropes or scaffolds,
> and can occasionally climb ramps or stairs.  She can
> occasionally balance, stoop, crouch, kneel or crawl. She
> is limited to frequent overhead reaching and handling
> with her right upper extremity, and must avoid
> concentrated exposure to extreme cold, heat and
> humidity. She must also avoid concentrated exposure to
> irritants such as fumes, odors, dust and gasses. She has
> psychological limitations, but retains the capacity to
> perform simple routine, 2-step tasks on a sustained basis.

(Dkt. 7-2, Pg ID 47).  At step four, the ALJ found that plaintiff had no past relevant

work.  At step five, the ALJ concluded that, considering plaintiff's age, education,

work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that she can perform.  (Dkt. 7-2, Pg

ID 51).

    B.    <u>Plaintiff's Claims of Error</u>

Plaintiff first claims that the hypothetical question posed to the vocational

expert did not accurately reflect her impairments in all significant and relevant

respects and, therefore does not constitute substantial evidence.  Plaintiff points to

the opinion of Dr. Douglas, who opined that plaintiff's social functioning is

reduced.  According to plaintiff, the ALJ failed to account for plaintiff's moderate

limitation in social functioning in his hypothetical question. Plaintiff contends that the ALJ gave significant weight to Dr. Menendes' assessment but failed to explain why the RFC was less restrictive than that assessment, including the opinion that plaintiff was restricted to "one-step" instructions.

Plaintiff also argues that the this matter should be remanded pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and AR 98-4(6). Plaintiff points to a prior decision by an ALJ dated April 28, 1998 involving plaintiff. (Case No. 00-10406, Dkt. 12). In that decision, the ALJ found that plaintiff was able to perform light work which did not require complex tasks and only the occasional requirement to bend or squat. *Id*.

In the current case, plaintiff testified that she broke her right wrist, it was fused and she cannot bend it. She also testified that she has trouble manipulating objects, gripping, and grasping and drops things. The ALJ failed to discuss why he did not find the right wrist fusion to be a severe impairment. Plaintiff also points out that the current RFC indicates that plaintiff is limited to frequent handling with her right upper extremity, but the prior denial limits her to only occasionally using her right hand. Prior medical evidence indicated that plaintiff could make a fist but had poor grip and newer evidence shows that her right wrist is fused with no range of motion and decreased grip. Thus, plaintiff says the limitations should be the same as previously determined. Plaintiff also argues that with her worsening heart

5

condition (previously she only had hypertension and now she suffers from coronary artery disease), she is less able to physically exert herself and therefore, her RFC should be reduced from light to sedentary.

C.   The Commissioner's Motion for Summary Judgment

The Commissioner sets forth additional details regarding plaintiff's application history.  The first application, for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, was filed on December 5, 1991, and was denied on medical grounds on May 19, 1992.  There was no request for further administrative review.  (Dkt. 21, Declaration of John H. Williams).  The second SSI application was filed on August 22, 1996, with a protected filing date of July 24, 1996.  The claim was medically denied on December 12, 1996. Plaintiff requested a hearing before an administrative law judge, who held a hearing and denied her claim on April 23, 1998.  Plaintiff sought review of that decision in this Court, but this Court affirmed the agency's decision as supported by substantial evidence in Case No. 00-10406.  The third SSI application was filed on July 18, 2000, and was medically denied on November 15, 2000, at the initial level.  An administrative law judge granted the application on February 20, 2002, and plaintiff was paid benefits from June 2000.  Plaintiff continued receiving SSI benefits through November 2004.

In November 2004, plaintiff's SSI benefits were stopped due to her receipt

of excess income.  Specifically, plaintiff began receiving Surviving Divorced

Mother's benefits under her late husband's account as a surviving divorced spouse

of her late husband and she had in her care an entitled child of her late husband

who was younger than 16.  Her Surviving Divorced Mother benefits terminated in

June 2007 because the youngest entitled child in her care turned 16.  The fourth

SSI application was filed August 29, 2011, and benefits were awarded at the initial

claims level.  (Dkt. 21).

The Commissioner contends that the Court should reject plaintiff's assertion

that Acquiescence Ruling 98-4(6), which implements the Sixth Circuit's decision

in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997),

requires remand, for several reasons.  First, according to the Commissioner, AR

98-4(6) applies only to the adjudication of "a subsequent disability claim with an

unadjudicated period arising *under the same title of the Act* as the prior claim."  *Id.*

(emphasis added).  This is consistent with the agency's res judicata regulation,

which provides that res judicata applies to a previous determination or decision

"under this subpart."  20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1).  The

Commissioner points out that plaintiff's prior cases were under Title XVI and

under the regulations contained at 20 C.F.R. Part 416, not under Title II and the

regulations contained at 20 C.F.R. Part 404.  Accordingly, the Commissioner

maintains that, under its own terms, AR 98-4(6) does not apply.

Second, the Commissioner argues that even if AR 98-4(6) would apply to the prior decisions, the SSA has determined that it does not apply when the prior decision cannot be located.  As the agency's claim processing manual states, "[i]f the prior file is lost or has been destroyed and the ALJ or [Appeals Council] decision cannot be located anywhere in SSA or by the claimant, the AR cannot be applied."  Program Operation Manual System DI 52705.010.  Although plaintiff has now been able to obtain information about the 1998 denial, this information came from this Court's records, not records in the possession of the agency. According to the Commissioner, it would be inequitable to allow plaintiff to fail to disclose the prior decision to the ALJ, before whom its introduction would not be expected to help plaintiff, and instead hold it back for introduction to this Court if the ALJ's decision were not favorable.

Third, the Commissioner argues that even if AR 98-4(6) were applicable and the 1998 decision had been available, the ALJ relied on adequate new and material evidence to justify his RFC finding.  The only way in which the prior RFC finding was more restrictive than the 2010 RFC finding was in the use of the right hand. The record shows that surgery had been performed on plaintiff's wrist in about 2003 (Tr. 187), and the ALJ could view evidence obtained after surgery as more probative of plaintiff's current status than evidence that was over a decade old. The ALJ noted that, at her consultative examination, plaintiff's neurological

8

examination was intact and that she had a hand grip strength of 20 pounds on the

right.  (Tr. 188).  She could open a jar, button clothing, write legibly, pick up a

coin, and tie shoelaces with either hand.  (Tr. 188).  She could make a fist,

although it was not a tight one.  (Tr. 190).  The opinion of the state agency

physician, which was largely based on the consultative examination report, stated

that plaintiff could frequently (but not constantly) reach, handle, and finger with

her right hand.  (Tr. 197).  In light of intervening medical treatment, the long gap

between the prior decision and the new decision, and the recent medical evidence,

the Commissioner maintains that the evidence considered by the ALJ would have

met the new and material standard of AR 98-4(6), and that is enough.  *See Collier*

*v. Comm'r of Soc. Sec*., 108 Fed.Appx. 358, 363 (6th Cir. 2004) (affirming ALJ

decision in a case in which the prior ALJ decision was lost given that there was

substantial evidence to support the ALJ's conclusion given the new medical

evidence considered by the ALJ).

Plaintiff also argues that the ALJ should have limited her to sedentary work

due to her cardiac impairment, but the Commissioner contends that this argument

does not arise under *Drummond* or AR 98-4(6) because the prior decision limited

plaintiff to light work.  Had AR 98-4(6) been applied, plaintiff would have had

to present new and material evidence showing that her cardiac status since the prior

decision had changed, but then the ALJ would have engaged in the same de novo

9

review that he applied here.  At the time of her consultative examination, plaintiff was on blood pressure medication but no other cardiac medicine.  (Tr. 187). Although the consultative examiner noted a murmur, his only cardiovascular diagnosis was somewhat uncontrolled hypertension.  (Tr. 188-89).  The murmur was described as grade II; that is, faint but easily audible with a stethoscope.  The Commissioner also points out that the state agency physician found that plaintiff could do light work.  (Tr. 185).  A November 2008 emergency-room visit after an assault reported normal cardiac examination findings.  (Tr. 234).  Plaintiff's primary care treatment records from Health Delivery, Inc. documented hypertension, but no cardiac complaints or other abnormalities.  (Tr. 258-69). Thus, the Commissioner asserts that during the earlier portion of the period under review, there was very little to suggest that plaintiff could not do light work. While plaintiff had a heart attack in November 2009 and was diagnosed with new-onset congestive heart failure, on follow-up, a cardiologist described her as clinically stable and told her that he did not need to see her again for a year.  (Tr. 315-16).  Plaintiff does not cite any evidence of continued cardiac problems that spanned a 12-month consecutive period, but assumes that anyone with even well-treated coronary artery disease should necessarily be limited to sedentary work.  Therefore, the ALJ could conclude, as he did, that plaintiff's coronary artery disease was responsive to treatment and thus was consistent with light exertion.

10

(Tr. 18).  The Commissioner also points out that neither plaintiff's cardiologist nor any other medical source placed exertional limitations on plaintiff.

Plaintiff also argues that the ALJ's residual functional capacity finding did not adequately account for her mental limitations.  However, according to the Commissioner, the ALJ's finding is generally consistent with the statements of both the state agency psychologist and the consultative examiner.  The state agency psychologist's bottom-line opinion was that plaintiff "retain[ed] the capacity to perform simple, routine, two-step tasks on a sustained basis."  (Tr. 44, 224).  While the psychologist did make other statements, the Commissioner contends that the ALJ could reasonably read his comments about reduced social functioning as prefatory to the psychologist's translation of plaintiff's limitations in the abstract to an assessment of the specific type of jobs that she could perform. In that view, the state agency psychologist recounted plaintiff's limitations — mildly restricted cognition, varied concentration, difficulty with complex tasks, and reduced social functioning — not to imply that each needed to be accounted for separately, but instead to support his ultimate conclusion that plaintiff could do simple, routine, 2-step tasks on a sustained basis.

The Commissioner also points out that the ALJ specifically referred to the state agency psychologist's opinion in formulating his hypothetical questions, including by stating that plaintiff had "psychological limitations."  (Tr. 44).  And

11

the jobs specified by the vocational expert, such as bench assembler and production inspector (Tr. 44), are consistent with somewhat reduced social abilities in that they do not involve significant social demands.  Thus, at most, the Commissioner argues that plaintiff has shown only harmless error.  The ALJ gave "significant" weight to the consultative examiner's opinion, but stated that it in some respects overstated plaintiff's limitations.  (Tr. 20).  Thus, the Commissioner maintains that the existence of some tension between the consultative examiner's opinion and the ALJ's RFC finding does not render the latter unsupported by substantial evidence.  And, the consultative examiner stated that plaintiff's social skills were "good," although she "may" have problems dealing with conflict.  (Tr. 207).  According to the Commissioner, the ALJ could reasonably conclude that the concerns identified by the consultative examiner concerning stress, difficult settings, conflict, or abstract thinking  (Tr. 207) could be accommodated by the state agency psychologist's limitation to work that was simple, routine, and consisted of no more than 2 steps.  While plaintiff correctly observes that the consultative examiner stated plaintiff could do one-step work while the state agency psychologist stated she could do two-step work, the Commissioner contends that she fails to explain why the ALJ was required to adopt the former opinion in contrast to the latter, particularly given the state agency psychologist's expertise in using medical evidence to make assessments about individuals'

functional abilities.

The Commissioner also points out that the ALJ explained that some of the consultative examiner's statements were inconsistent with other evidence, particularly plaintiff's activities.  In making this explanation, he pointed to plaintiff's social activities, such as going to church and interacting with her family. (Tr. 20).  Furthermore, plaintiff reported being able to read the Bible and the newspaper (Tr. 204), tasks which require some amount of concentration, but presented as able to recall only two numbers backward and as unable to name any famous people.  (Tr. 205).  She also claimed an inability to perform the serial threes task (i.e., repeatedly subtracting three from a specified number).  (Tr. 205). And, because the consultative examiner noted some problems with effort and persistence, including a discrepancy between testing on the one hand and plaintiff's presentation and ability to express herself on the other (Tr. 206-07), the ALJ could reasonably look to plaintiff's acknowledged daily activities as being contrary to the portions of the mental status examination over which she could exercise control. Thus, to the extent that the ALJ's RFC finding was less restrictive than the consultative examiner's opinion, the Commissioner contends that the ALJ provided valid reasons consistent with the record as to why he did not adopt all of the opinion.

D.    Plaintiff's Reply

13

In reply, plaintiff points out that the application history recited by the Commissioner brings to light information previously unknown to plaintiff's attorney.  (Dkt. 20).  With this new information, plaintiff asserts that this matter should be remanded for further proceedings and development because there was an error of fact and of law that occurred at the initial level, before this case even reached the ALJ.  Specifically, plaintiff points to the February 2002 approval of benefits.  Plaintiff's SSI benefits were cut-off in November 2004 only because of her subsequent receipt of excess income, not because of medical improvement. Plaintiff also points out that when she was approved in 2002, she was a "younger individual" under the Medical-Vocational Guidelines.  In 2008, when she applied for disabled widow benefits, plaintiff says her SSI benefits should have been reinstated while the new application was pending.[1]  In addition, the 2002 decision, which was favorable to plaintiff, should be produced because it is even more important than the 1998 denial for comparison under *Drummond*.  Plaintiff also points out that 20 C.F.R. § 416.994(B)(1)(vii) provides that the Commissioner will use the "most recent favorable medical decision that you were disabled" as a point

---

[1]  While plaintiff has not fully explored this issue on appeal, and therefore, it does not seem appropriate to decide this issue at this juncture, it appears that plaintiff would not be entitled to reinstatement. *See Messer v. Astrue*, 2010 WL 4791956 (E.D. Ky. 2012) ("Once a claimant's benefits are terminated, as opposed to merely suspended, he must submit a new application for benefits subject to the five-step sequential evaluation process.").  Plaintiff does not contend, and there is no evidence in this record suggesting, that plaintiff's benefits were suspended as opposed to terminated.

of comparison for determining medical improvement.

Plaintiff says the Commissioner is incorrect that *Drummond* does not apply because one claim arises under Title XVI and one under Title II.  Plaintiff points out that both Titles arise under the same Title of the Social Security Act - Title 20.  Plaintiff also urges the Court to reject the Commissioner's "equity" argument because obviously the Commissioner had knowledge of prior decisions and did not request them.  In summary, plaintiff argues that there was a fully favorable decision in 2002, leading to the payment of benefits, there was never a medical review or determination of any medical improvement and yet, plaintiff has to continue to fight for benefits when she was already determined to be disabled.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed

in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

20

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

Generally, principles of *res judicata* require that the administration be bound by a prior decision unless a change of circumstances is proven on a subsequent application. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. *Drummond*, 126 F.3d at 842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841. The Commissioner bears the burden to prove changed circumstances so as to escape being bound by the principles of *res judicata*. *Id*. at 842-43 ("We reject the

21

Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence ....  Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner.").  Acquiescence Ruling 98-4(6), issued post-*Drummond*, instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding...."  The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review."  *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

In this case, plaintiff was awarded SSI benefits, which were then terminated, not because of medical improvement, but because her income became too high based on her receipt of other benefits.  Once those benefits were no longer available, she applied for widow's disability benefits.  She was denied benefits, but no consideration was given to the 2002 decision regarding her award of SSI benefits.  This case is quite similar to *Harris v. Astrue*, 2010 WL 3909495 (S.D. Ohio 2010), *adopted by* 2010 WL 3909493 (S.D. Ohio 2010).  In *Harris*, the claimant's SSI benefits were terminated after five months because the proceeds

from a workers' compensation settlement put her over-income.  The Court found

that, under *Drummond*, the Commissioner erred by failing to apply the correct

legal standard, with regard to *res judicata*, to a prior initial administrative

determination of disability when claimant subsequently filed another application

for SSI.  In finding that the case should be remanded to the ALJ on the issue of *res

judicata*, the Court opined:

> The Court of Appeals held in *Drummond*, "Absent
> evidence of improvement in a claimant's condition, a
> subsequent ALJ is bound by the findings of a previous
> ALJ." 126 F.3d at 842 (citations omitted). "The burden is
> on the Commissioner to prove changed circumstances
> and therefore escape the principles of res judicata."
> *Drummond*, 126 F.3d at 843.
>
> In the present case the Commissioner argues that
> *Drummond* applies only to prior ALJ decisions, not to
> other agency decisions.  Consequently, according to the
> Commissioner, ALJ Armstead was not obligated by
> *Drummond* to discuss or apply res judicata to the prior
> disability examiner's determination that Plaintiff met
> Listing 12.04.
>
> The Commissioner's contention lacks merit. Although
> the previous administrative decision was not made by an
> ALJ, it did constitute a determination by the Social
> Security Administration that Plaintiff met Listing 12.05.
> See Tr. 33, 51; cf. 20 C.F.R. § 404.901 (defining
> "determination" to include "the initial determination or
> the reconsidered determination"). Such determinations
> are "subject to the doctrine of administrative res
> judicata." *Drummond*, 126 F.3d at 841 (citing *Draper v.
> Sullivan*, 899 F.2d 1127, 1130 (6th Cir. 1990)). This
> determination, moreover, constituted a final decision
> concerning Plaintiff's entitlement to benefits because it

> resulted in Plaintiff actually receiving SSI. See Tr. 51 (Notice of Award explaining to Plaintiff that she was both medically and non-medically eligible to receive SSI and explaining the amount of benefits she would receive). "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond*, 126 F.3d at 842.

*Harris*, at *4-5; *see also Miller v. Astrue*, 2012 WL 220234 (S.D. Ohio 2012), *adopted by* 2012 WL 4504545 (S.D. Ohio 2012). That reasoning applies here. The Commissioner determined in 2002 that plaintiff was disabled under the same five-step analysis that was conducted here. Absent evidence of medical improvement, the Commissioner has not met his burden that *res judicata* does not apply.

The undersigned is not persuaded by the Commissioner's assertion that *Drummond* does not apply because AR 98-4(6) only applies if the applications were made "under the same title."[2]  This issue was considered, and rejected, in *Kaufman v. Astrue*, 2011 WL 3862350 (N.D. Ohio 2011), *adopted by* 2011 WL 3862345 (N.D. Ohio 2011).  In *Kaufman*, the court pointed out that AR 98-4(6) recognizes that "[a]lthough *Drummond* was a title II case, similar principles also apply to title XVI.  Therefore, this Ruling extends to both title II and title XVI

---

[2] Plaintiff's argument that both claims arise under Title 20 of the United State Code, and therefore arise "under the same title" is equally unappealing. It is clear from the Ruling that the Commissioner was referring to title II and title XVI. As discussed, *infra*, the Court concludes that this distinction is neither controlling nor material.

24

disability claims." *Id*. at *5, quoting AR 98-4(6). The court concluded that while

AR 98-4(6) clearly recognizes that the rule announced in *Drummond* applies with

equal force to title II and XVI claims, "the Ruling falls short of determining

whether it applies to a title II claim when the previous claim was a title XVI

claim." *Id*. However, the court applied *Drummond* anyway because the

determination is identical under both titles. *Id.* This Court agrees with *Kaufman*

and concludes that this is the only reasonable and logical result. Otherwise, the

principles of *res judicata* and collateral estoppel are essentially gutted and

meaningless.

Additionally, to the extent that the AR is inconsistent with *Drummond*, this

Court and the Commissioner are required to follow *Drummond*. As the *Harris*

court pointed out, the "Commissioner's Acquiescence Rulings-like the

Commissioner's Regulations-are not the supreme law of the land. 'It is,

emphatically, the province and duty of the judicial department, to say what the law

is,' *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137 (1803), ['] and the

[Commissioner] will ignore that principle at [her] peril.'" *Harris*, at *5, quoting

*Hutchison for Hutchison v. Chater*, 99 F.3d 286, 287–88 (8th Cir. 1996) (other

citations omitted) (brackets in *Hutchison*). *Harris* questions whether AR 98-4(6) is

consistent with *Drummond* because the Ruling does not use the phrase

"improvement in a claimant's condition" when instructing ALJs how to apply

25

*Drummond.*  Rather, it allows ALJs to use "new and material evidence relating to such a [prior] finding ..." to avoid administrative *res judicata* without considering whether such evidence also shows improvement in a claimant's condition.  *Harris*, at *5.  According to *Harris*, "[t]his leaves an ALJ free to overlook the Commissioner's burden, under *Drummond*, to point to evidence of improvement in a claimant's condition."  *Id.*, citing *Drummond*, 126 F.3d at 841-42.

As noted above, because the 2002 decision did not come to light until the Commissioner filed his motion for summary judgment in this case, the Commissioner has not attempted to show that plaintiff's condition improved since the 2002 decision awarding benefits.[3]  While, on appeal, the Commissioner goes through a lengthy analysis of the medical evidence of record to justify the ALJ's RFC and decision to deny benefits, such a justification of the ALJ's decision is immaterial without a proper analysis under *Drummond* at the administrative level. *Blevins v. Astrue*, 2012 WL 3149343, *6 (E.D. Ky. 2012) ("It is not enough that the ALJ relies on new evidence that post-dates the earlier decision to arrive at his determination; the holding of *Drummond* requires that such new evidence demonstrate 'an improvement in a claimant's condition.'").  Just as *Blevins*, there is no mention of *Drummond* in the ALJ's decision and no suggestion that the

_____

[3] The Commissioner argues that its manual and rulings state that *res judicata* will not apply if the prior ruling cannot be located. This argument was made with respect to the 1998 decision, but not as to the 2002 decision, which is the critical decision at issue, and not part of this record. Thus, this issue will not be addressed further.

principles of administrative *res judicata* were considered.  *Id*. at *6.  For this reason, a remand is required.

Based on the foregoing, the Court **GRANTS** plaintiff's motion for summary judgment, **DENIES** the Commissioner's motion for summary judgment, and **REMANDS** the action under sentence four to provide the ALJ an opportunity to specifically address his findings in light of *Drummond*.  The parties have advanced several additional arguments on appeal, however the Court deems it unnecessary to resolve these issues until the issue of *res judicata* is addressed at the administrative level.  *See e.g.*, *Blevins*, at *6.

**IT IS SO ORDERED**.

Date: September 13, 2013            s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on September 13, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mikel E. Lupisella, William L. Woodard, AUSA, and Jason Scoggins, Social Security Administration.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7887
                                    tammy_hallwood@mied.uscourts.gov